UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

REGINALD FOWLER,                    )
                                    )
          Petitioner,               )
                                    )
v.                                  )          Nos.  1:14-CV-256-HSM-CHS
                                    )
JAMES M. HOLLOWAY,                  )
                                    )
          Respondent.               )

## **MEMORANDUM OPINION**

Presently before the Court is a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Reginald Fowler [Doc. 1] challenging his 2008 Tennessee state court conviction for aggravated arson.  Respondent James M. Holloway has filed an answer in opposition [Doc. 4], as well as a copy of the state court record [Doc. 5].  Petitioner has filed two replies [Docs. 9 and 13], along with a letter styled as a motion for new trial [Doc. 12], which essentially reiterates the arguments presented in his § 2254 petition.  For the following reasons, Petitioner's § 2254 petition and motion for new trial will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

## I.    **PROCEDURAL HISTORY**

On February 19, 2008, Petitioner was indicted by a grand jury in Knox County, Tennessee, on a charge of aggravated arson in violation of Tennessee Code Annotated § 39-14-302 [Doc. 5 Attachment 1 pp. 1–3].  He was accused of knowingly setting fire to his room at the Hamilton Inn, a residence hotel in Knoxville.  After waiving his right to trial by jury [Doc. 5 Attachment 2 pp. 15–23], Petitioner proceeded to a bench trial before Judge Richard R.  Baumgartner in the Knox County Criminal Court.  On November 13, 2008, Petitioner was found guilty of aggravated arson

[Doc. 5 Attachment 5 p. 229].  On January 22, 2009, Petitioner was sentenced to a term of imprisonment of 20 years [*Id*. p. 247].

Petitioner appealed his conviction and sentence to the Tennessee Court of Criminal Appeals ("TCCA") raising three issues: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in failing to enforce the Rule of Sequestration in violation of Rule of Evidence 615; and (3) the trial court erred in permitting the State to call a rebuttal witness [Doc. 5 Attachment 8].  The TCCA affirmed Petitioner's conviction and sentence and Petitioner's application for permission to appeal was denied by the Tennessee Supreme Court.  *State v. Fowler*, No. E2009-00293-CCA-R3-CD, 2010 WL 3774413 (Tenn. Crim. App. Sept. 29, 2010) *perm. app. denied* (Tenn. Mar. 9, 2011)

Petitioner timely filed a petition for post-conviction relief in the Knox County Criminal Court raising three grounds for relief: (1) he was denied his right to a fair trial due to the impairment of the trial judge; (2) he was denied the effective assistance of trial counsel rendering his waiver of a jury trial involuntary; and (3) he was denied the effective assistance of counsel when his counsel failed to obtain and present expert testimony on the effects of crack cocaine addiction [Doc. 5 Attachment 12].  Following an evidentiary hearing, the post-conviction court denied relief [Doc. 5 Attachment 14 pp. 329-338].  The judgment of the post-conviction court subsequently was affirmed by the TCCA.  *Fowler v. State*, No. E2013-01554-CCA-R3-PC, 2014 WL 3362351 (Tenn. Crim. App. July 9, 2014).

## II.    FACTUAL BACKGROUND

The decision of the TCCA affirming Petitioner's conviction and sentence on direct review sets forth a lengthy summary of the evidence from Petitioner's bench trial in December of 2008.

*Fowler*, 2010 WL 3774413, at \*1–16.  The TCCA aptly summarized that evidence in its opinion affirming the judgment of the post-conviction court as follows:

> In sum, after arguing with his live-in girlfriend about his drug use, petitioner checked in to an extended-stay hotel in Knoxville for the purpose of smoking crack cocaine without interruption.  At some point, a fire began in petitioner's hotel room.  Hotel employees noted that a dresser had been pushed in front of the door to block entry into the room, the smoke detector had been disabled and concealed, and the fire extinguisher had been removed and placed in the adjacent laundry room.  The State's expert witness opined that the fire had been intentionally set and originally noted four points of origin.  Petitioner testified that the fire was accidental and presented an expert witness to support his contention.  Nonetheless, the trial court credited the State's proof, found petitioner guilty of aggravated arson, and sentenced him to twenty years in the Tennessee Department of Correction.

*Fowler*, 2014 WL 3362351, at \*1.

The opinion of the TCCA affirming the decision of the post-conviction court also contains a recitation of the facts from the evidentiary hearing held by the post-conviction court and summarizes the testimony heard from Petitioner, pharmacologist Dr. Glen Farr, and Petitioner's trial counsel, Attorney Robert C. Edwards.  *Id*., at \*1–4.  To the extent the facts from that hearing are relevant to the claims raised by Petitioner in his § 2254 petition, they will be addressed below in the analysis of those specific claims.

## III.    STANDARD OF REVIEW

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, which amended § 2254, sets forth "an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007).  By this standard, when a state court adjudicates a claim on the merits, habeas relief is available only if the adjudication of that claim "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's ruling is an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from Supreme Court precedent but unreasonably applies it to the facts of the particular state prisoner's case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

Under the AEDPA, a habeas petitioner must "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet," "highly deferential," and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

## IV. ANALYSIS

Petitioner's § 2254 petition raises four grounds for relief: (1) he was denied his right to due process because the evidence presented at trial was insufficient to support a conviction for aggravated arson; (2) he was denied his right to a fair trial due to the trial judge's impairment

during his trial and sentencing; (3) he was denied his right to effective assistance of counsel and his right to a fair trial when his counsel advised him to waive his right to a jury trial; and (4) he was denied his right to effective assistance of counsel due to counsel's failure to present expert testimony from a pharmacologist [Doc. 1].

### A. SUFFICIENCY OF THE EVIDENCE

Petitioner's first claim is that the evidence presented at his trial was insufficient to support a conviction for aggravated arson. Specifically, he maintains that the fire was accidental and that, other than the "incredible" testimony of the State's expert, Fire Investigator Travis Kincaid, there was "no evidence" supporting a finding that he set the fire knowingly, an essential element of the offense of aggravated arson [Doc. 1 pp. 22–25].

Petitioner challenged the sufficiency of the evidence on direct appeal and the TCCA adjudicated the claim on the merits. Taking the evidence in the light most favorable to the state, the TCCA concluded that a rational trier of fact could have found the elements of aggravated arson beyond a reasonable doubt and held that the evidence was sufficient to support Petitioner's conviction. *Fowler*, 2010 WL 3774413, *17. Respondent argues that the decision of the TCCA is entitled to deference under § 2254(d).

### 1. APPLICABLE LAW

The Due Process Clause of the Fourteenth Amendment protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When a habeas petitioner challenges his conviction based upon insufficient evidence the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

"This standard is even more exacting" under § 2254, as a review of the state court's merits determination must be made "through AEDPA's deferential lens." *Hill v. Mitchell*, 842 F.3d 910, 933 (6th Cir. 2016). Thus, in giving proper deference both to the verdict and to the state court opinion upholding that verdict, even if the Court were to "'conclude that a rational trier of fact could *not* have found the petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state *appellate court's* sufficiency determination as long as it is not unreasonable." *Id*. at 933–34 (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

## 2. DISCUSSION

In light of this exacting standard, Petitioner's challenge to the sufficiency of the evidence supporting his conviction must fail. In addressing Petitioner's claim, the TCCA identified *Jackson* as the standard and applied it in a reasonable manner. The TCCA made reference to the elements of the offense of aggravated arson under Tennessee law and set forth the relevant evidence supporting it. The court noted that an element of the offense of aggravated arson is that the defendant acted "knowingly," and that a person acts knowingly "when he is aware that his conduct is reasonably certain to cause the result." *Fowler*, 2010 WL 3774413, at *17 (citing Tenn. Code. Ann. §§ 39-14-301; 39-14-302(a)(1) and 39-11-106(a)(20)).

Summarizing the proof supporting Petitioner's conviction, the TCCA highlighted Kincaid's testimony that there was more than one place in the room which showed evidence of burning and that both Kincaid and the rebuttal expert testified that the fires were consistent with arson. *Fowler*, 2010 WL 3774413, at *17. In addition, two other witnesses testified they saw more than one fire burning in the room and another testified that he saw makeshift torches on the dresser

6

and sink. *Id.* Significantly, the TCCA pointed out that the room's smoke detector was disabled, the fire extinguisher was removed and a dresser was moved in front of the door, blocking entry into the room. *Id.* Based on the foregoing evidence, the inference that Petitioner knowingly set the fire is not an unreasonable one, and the Court must presume that both the trial judge and the TCCA resolved any reasonable conflicting inferences in favor of the prosecution. *See Copeland v. Tiseo*, 645 F. App'x 500, 506 (6th Cir. 2016).

Petitioner's argument to the contrary focuses almost exclusively on the alleged lack of credibility of Kincaid's testimony. Under *Jackson*, however, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence). Moreover, "[t]he trier of fact . . . holds 'the responsibility ... fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Tibbs v. Florida*, 457 U.S. 31, 45 n. 21 (1982) (quoting *Jackson*, 443 U.S. at 319)). Here, the trial court found the testimony of Kincaid and the rebuttal expert to be more credible and consistent with the evidence as a whole than the testimony of the defense expert, and it is not for this Court to reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute its judgment for that of the trier of fact. *See Brown*, 567 F.3d at 205.

Under the doubly deferential standard of *Jackson* and the AEDPA, the Court is satisfied that the evidence presented at Petitioner's trial was sufficient for a rational trier of fact to find all of the essential elements of the crime of aggravated arson beyond a reasonable doubt and that the decision of the TCCA so finding was not unreasonable. Accordingly, because the decision of the

TCCA was neither contrary to, nor an unreasonable application of, federal law as established in *Jackson*, Petitioner's sufficiency-of- the-evidence claim will be denied.

## B.     RIGHT TO FAIR TRIAL—IMPAIRMENT OF TRIAL JUDGE

Petitioner's second habeas claim is that he was denied his right to a fair trial under the Due Process Clause of the Fourteenth Amendment due to the trial judge's impairment during his bench trial and sentencing.  Specifically, Petitioner maintains that Judge Baumgartner, who resigned from the bench in March of 2011 after pleading guilty to official misconduct, was impaired by a prescription drug addiction during Petitioner's trial in December of 2008 and sentencing in January of 2009 [Doc. 1 pp. 26–28].

Petitioner raised this issue in his state post-conviction petition.  Following an evidentiary hearing, the post-conviction court rejected the claim and the TCCA concluded on appeal that "Petitioner has presented no credible evidence that the trial judge was impaired during the proceedings or that his misconduct outside of the courtroom affected his ability to preside over petitioner's trial and sentencing hearing."  *Fowler*, 2014 WL 3362351, at *6.  Respondent argues that the decision of the TCCA is entitled to deference under § 2254(d).

### 1.     APPLICABLE LAW

The Fourteenth Amendment to the United States Constitution provides in pertinent part that "[no] State shall deprive any person of life, liberty or property, without due process of law." U.S. Const. amend XIV.  "[T]he floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal' . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (citation omitted).  The Supreme Court further has recognized that a defendant has a right to "'a tribunal

both impartial and mentally competent to afford a hearing.'" *Tanner v. United States*, 483 U.S. 107, 126 (1987) (quoting *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912)).

Petitioner contends that the impairment of the trial judge during his trial and sentencing is a structural error requiring automatic reversal. Structural constitutional errors "'infect the entire trial process,'" and "'necessarily render a trial fundamentally unfair.'" *Neder v. United States*, 527 U.S. 1, 8 (1999) (citations omitted). Such errors "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Id.* at 8–9 (quoting *Rose v. Clark*, 478 U.S. 570, 577–78 (1986)).

In collateral proceedings, the test is "whether the errors alleged ... could have rendered [the] trial fundamentally unfair." *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985) (quoting *Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978)). "To violate a defendant's right to a fair trial, 'a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree.'" *McBee*, 763 F.2d at 818 (quoting *Daye v. Attorney General of New York*, 712 F.2d 1566, 1572 (2d Cir.1983)).

## 2. POST-CONVICTION EVIDENTIARY HEARING

At the evidentiary hearing held on Petitioner's state post-conviction petition, the court heard testimony from Petitioner and from his trial counsel as to the trial judge's condition at the time of Petitioner's trial and sentencing hearing. Petitioner's testimony was summarized by the TCCA as follows:

> Petitioner recalled that the trial court "nodded off" during the arson investigator's testimony. When petitioner called it to the attention of trial counsel, counsel told him to "shut up" so he could hear the testimony. Petitioner stated that trial counsel "gave [him] a kind of look like, '[T]here's no way in the world I'm going to tell the Judge that he [was] asleep.'" Petitioner stated that the trial court fell asleep three

times during his two-day trial.  However, he recognized, "I know if I say it, there is no way that I'm going to win."

*Fowler*, 2014 WL 3362351, at *3.

The testimony of Petitioner's trial counsel at the evidentiary hearing was summarized by

the TCCA as follows:

> Trial counsel recalled that he was assigned to the trial judge's courtroom in 2007. Trial counsel noticed that in 2007 and 2008, the trial judge began to withdraw. The judge was not as "social" or "engaging" as he had been.  In early 2008, the trial judge became impatient and often appeared to be "lost in the proceedings."  On one occasion, trial counsel was an observer in the courtroom when the trial judge began to lower his head toward the desk.  His head continued to lower until it was one to two inches above the desk, at which time the trial judge sat up and called a recess. According to trial counsel, the defense bar speculated about whether the trial judge had a drinking problem or was suffering the effects of medication for diverticulitis. Trial counsel noted that in July and August 2008, the trial judge "took a break," and when he returned, he was more engaged and focused than before.  Approximately six to eight weeks following the trial judge's return, he heard petitioner's case.
>
> . . .
>
> With regard to the trial judge's demeanor during trial, trial counsel testified that one specific time, he objected to testimony, and the trial judge was "lost" and could not recall what had been said.  They had to repeat the testimony for his benefit.  The trial judge was also "oppositional" to trial counsel's cross-examining the State's expert witness by use of a learned treatise.  However, he characterized the trial judge's reaction to petitioner's calling him the "drug judge" as "quipping" during a "light moment" because the trial judge "knew full-well what he was referring to."
>
> At trial, upon cross-examination by trial counsel, the State's expert witness changed his testimony to reflect two points of origin of the fire rather than the original four points he identified.  However, trial counsel stated that the trial court kept referring to four or five points, as if he had somehow missed the testimony.  Trial counsel was "amazed" and "flabbergasted" that the trial judge did not "get it."  He "did not understand why [the trial judge] ignored the physical evidence."
>
> Trial counsel stated that he believed that the trial judge had been "engaged in opiate abuse for a long time" and "that sustained intellectual analysis [was] not possible." He agreed that "operating in hindsight" and knowing what the trial judge had been through, he believed that the demeanor he observed at trial was the result of drug use.  He acknowledged that although the trial judge's medical records indicated that he was not using prescription medications during petitioner's trial, he nonetheless could have obtained the medications through other means.  Finally, contrary to

petitioner's testimony, trial counsel indicated that he had not witnessed the trial judge "nod off," although his attention was not always focused on him.

Id., at *4.

After hearing the testimony and reviewing the record, including the reports of the Tennessee Bureau of Investigation relating to the trial judge [Doc. 5 Attachment 12 pp. 49–171; Attachment 13 pp. 172–203], the post-conviction court found that Petitioner failed to show that the trial judge was impaired *during* Petitioner's November 2008 trial and January 2009 sentencing [Doc. 5 Attachment 14 p. 334].   As summarized by the TCCA, the post-conviction court made four observations in denying Petitioner's claim:

> (1) "the incident most emphasized" by petitioner, his reference to the trial judge as "the drug judge," was refuted by trial counsel's testimony that it was merely "banter"; (2) petitioner's assertion that the trial judge "nodded off" during the proceedings was refuted by trial counsel's testimony that he did not observe any such instance; (3) although the records indicated that the trial judge abused alcohol and prescription medications prior to petitioner's trial, none of the reports "support a conclusion that [the trial judge] was impaired during the November 2008 trial or the January 2009 sentencing hearing"; and (4) trial counsel's argument that the trial judge was impaired, as evidenced by the judge's failure to comprehend the expert testimony, was "refuted by the trial judge's thoroughly logical explanation of his reasoning in finding the petitioner guilty."

*Fowler*, 2014 WL 3362351, at *6.

The TCCA agreed with the post-conviction court and concluded that "Petitioner has presented no credible evidence that the trial judge was impaired during the proceedings or that his misconduct outside of the courtroom affected his ability to preside over Petitioner's trial and sentencing hearing."  *Id*.

### 3.     DISCUSSION

The Court's task is to determine whether the Tennessee state courts applied due process principles in a manner that was unreasonable.  *See Allen v. Hawley*, 74 F. App'x 457, 461 (6th Cir.

2003).  Upon review of the state court decisions and the record as a whole, the Court cannot find that the denial of Petitioner's due process claim was unreasonable.

Although the TCCA did not cite to any United States Supreme Court precedent, or even the Due Process Clause, in its analysis, it did refer to, and rely upon, an Order from the Tennessee Supreme Court holding that "a trial judge's misconduct outside the courtroom does not constitute structural error 'when there is no showing or indication in the record that the trial judge's misconduct affected the trial proceedings.'" *Fowler*, 2014 WL 3362351, at *5 (quoting Order, *State v. Letalvis Cobbins*, No. E2012-00448-SC-R10-DD (Tenn. May 24, 2012)).  The standard quoted in the *Cobbins* order and applied by the TCCA is consistent with and, in fact, was derived from relevant Supreme Court case law on structural constitutional error, including *Neder* and *Bracy*. *See Cobbins*, No. E2012-00448-SC-R10-DD (Tenn. May 24, 2012).  Accordingly, the AEDPA's deferential standard applies to the Court's review of the TCCA's merits adjudication. *See Slagle v. Bagley*, 457 F.3d 501, 513–14 (6th Cir. 2006) ("The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them … it is sufficient that the result and reasoning are consistent with Supreme Court precedent").

As already noted, under the "unreasonable application" prong of 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in the Supreme Court cases which govern the issue, but unreasonably applies the principle to the particular facts of the case. *Williams*, 529 U.S. at 413.  Further, where findings of fact are supported by the record, they are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

In this case the post-conviction court found that Petitioner failed to prove that the trial judge was impaired during Petitioner's trial and sentencing hearing and the TCCA agreed.  This

conclusion is supported by the record.  As noted by the post-conviction court, the investigation of former Judge Baumgartner did not begin until September of 2010 and the "TBI records fall short of showing impairment of the judge during these late 2008 and early 2009 proceedings."  [Doc. 5 Attachment 14 p. 333].  Moreover, although Petitioner's trial counsel speculated that the judge was suffering the effects of alcohol or medications around the time of Petitioner's trial and sentencing, he also testified that the trial judge "'took a break'" in July and August of 2008 and when he returned, only 2 months prior to Petitioner's trial, the judge "was more engaged and focused than before." *Fowler*, 2014 WL 3362351, at *3.

Additionally, the post-conviction court's conclusion that the asserted instances of the trial judge's purported "confusion" during the trial were "insignificant" also is reasonable based upon the testimony and the record [Doc. 5 Attachment 14 pp. 332–34].  The Court has reviewed the transcripts of Petitioner's trial [Doc. 5 Attachments 2–5] and agrees that any episodes of confusion were minor missteps that could happen during the course of any trial, and do not suggest that the trial judge was impaired.  *See Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ("[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one").  Indeed, Petitioner's counsel testified at the evidentiary hearing that "I'm not able to say with any certainty that I saw anything that makes me think he was not paying attention."  [Doc. 5 Attachment 15 p. 145].

Under the AEDPA's deferential standard, the Court is satisfied that the state court decision finding that Petitioner failed to show by clear and convincing evidence that the trial judge was impaired during Petitioner's trial and sentencing hearing was not an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Petitioner's claim that he was denied his right to a fair trial under the Due Process Clause will be denied.

### C.    INEFFECTIVE ASSISTANCE OF COUNSEL–WAIVER OF JURY TRIAL

Petitioner's third habeas claim is that he was denied his Sixth Amendment right to the effective assistance of counsel and his Fourteenth Amendment right to a fair trial when his attorney advised him to waive his right to a jury trial. Specifically, he alleges that his trial counsel was aware that the trial judge was abusing narcotics but failed to advise Petitioner of that fact prior to his decision to proceed with a bench trial [Doc. 1 pp. 29–31]. Respondent argues that this claim is procedurally defaulted and the Court agrees.

In his state post-conviction petition, Petitioner raised a claim that his trial counsel was ineffective in advising him to waive his right to a jury trial [Doc. 5 Attachment 12 pp. 5-7]. However, on appeal to the TCCA from the denial of his post-conviction petition Petitioner argued that "the post-conviction court erred in finding [he] knowingly, intelligently and voluntarily waived his right to a jury trial" and made no mention of ineffective assistance of counsel [Doc. 5 Attachment 17 p. 23]. When the State responded that Petitioner had waived any claim that his waiver of his right to jury trial was involuntary by not raising it either on direct review or in his post-conviction petition, [Doc. 5 Attachment 18 pp. 40–42], Petitioner replied that he had not intended to raise a claim that his waiver was involuntary but instead meant to rely upon his previous claim that he was denied the effective assistance of counsel [Doc. 5 Attachment 19 pp. 5-7].

The TCCA concluded that Petitioner's claim in his initial brief was framed as a "freestanding claim" that the waiver of his right to a jury trial was involuntary,[1] rather than as an

---

[1] The Sixth Amendment guarantees the "right to a speedy and public trial, by an impartial jury …" U.S. Const. amend. VI. The Fourteenth Amendment guarantees a right of jury trial in all criminal cases which, were they to be tried in a federal court, would come within the Sixth Amendment's guarantee. *Duncan v. State of Louisiana*, 391 U.S. 145, 149 (1968). Because the

ineffective assistance of counsel claim. *Fowler*, 2014 WL 3362351, at \*6. Because Petitioner could have raised the issue on direct appeal, but did not do so, the TCCA found that Petitioner's freestanding claim was waived. *Id*. The TCCA further concluded that Petitioner also had waived any ineffective assistance of counsel claim based on the waiver of his right to a jury trial by not properly presenting it for appellate review, noting that Petitioner "failed to cite any legal authority whatsoever in support of this claim in either his initial brief or his reply brief." *Id*.

A petitioner who fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses federal habeas review, unless the petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id*. at 750. If a § 2254 petitioner failed to raise a claim on appeal and thereby violated a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for the default." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

Here, the TCCA invoked state procedural rules as the basis for declining to review both a freestanding claim of an involuntary waiver of Petitioner's right to a jury trial, Tenn. Code Ann. § 40-30-106(g), and a claim of ineffective assistance of counsel relating to that waiver, Tenn. R. App. P. 27(a)(7) and Tenn. Ct. Crim. App. R. 10(b). *Fowler*, 2014 WL 3362351, at \*6. Because Petitioner is barred from returning to the state courts on those claims, they have been procedurally

---

right to a jury trial is fundamental, a waiver of that right must be voluntary, knowing, and intelligent. *Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011).

defaulted and are not reviewable on habeas unless Petitioner can show cause to excuse his failure to comply with the state procedural rules and actual prejudice.

Ordinarily, "attorney error in state post-conviction proceedings 'cannot constitute cause to excuse [a] default in federal habeas'" because there is no constitutional right to an attorney in those proceedings. *West*, 790 F.3d at 697 (quoting *Coleman*, 501 U.S. at 757). However, in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court carved a narrow exception to the *Coleman* rule, holding that:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320; *see also Trevino v. Thaler*, 133 S. Ct. 1911 (2013) (extending *Martinez* rule to states whose procedural requirements make it "virtually impossible" to present an ineffective assistance claim on direct appeal even if there is no outright prohibition on doing so).

Because Tennessee's procedural framework directs defendants to file ineffective-assistance claims in post-conviction proceedings rather than on direct appeal, the Sixth Circuit Court of Appeals has held that the *Martinez-Trevino* exception to *Coleman* applies in Tennessee cases. *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014).

Importantly, however, a petitioner cannot use the ineffective assistance of counsel at the post-conviction *appellate* stage to excuse a procedural default because it is not an initial-review collateral proceeding. *Wallace v. Sexton*, 570 F. App'x 443, 453 (6th Cir. 2014). The *Martinez* court made explicit that the narrow exception it carved out "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1320.

As set forth above, although Petitioner raised an ineffective assistance of counsel claim relating to the waiver of his right to a jury trial to the post-conviction *trial* court, he did not properly raise that claim in the *appeal* from the denial of his post-conviction petition, and the *Martinez* exception therefore does not apply to excuse Petitioner's default of that claim. *Wallace*, 570 F. App'x at 453. Petitioner likewise did not raise any freestanding Fourteenth Amendment claim that the waiver of his right to a jury trial was involuntary either on direct appeal or in his post-conviction petition, and he has established no cause for that failure either. Accordingly, Petitioner's third habeas claim, whether framed as a Sixth Amendment ineffective assistance of counsel claim or as a freestanding involuntary waiver claim under the Fourteenth Amendment, has been procedurally defaulted and, because Petitioner cannot establish cause to excuse the default, his claim will be dismissed.

**D. INEFFECTIVE ASSISTANCE OF COUNSEL–EXPERT WITNESS**

Petitioner's final habeas claim is that he was denied his Sixth Amendment right to the effective assistance of counsel based on trial counsel's failure to call an expert witness at trial. Specifically, Petitioner alleges that his trial counsel should have sought the testimony of an expert in pharmacology to bolster his defense that he did not have the requisite state of mind to knowingly set a fire due to crack cocaine abuse [Doc. 1 pp. 31–32].

Petitioner raised this issue in his state post-conviction petition. Following an evidentiary hearing, the post-conviction court rejected the claim and the TCCA concluded on appeal that counsel's failure to call such an expert at trial did not amount to ineffective assistance. *Fowler*, 2014 WL 3362351, at *8. Respondent argues that the decision of the TCCA is entitled to deference under § 2254(d).

### 1.    APPLICABLE LAW

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  Under the Sixth Amendment, a defendant has a constitutional right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  *Id.*

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689.

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. While both prongs must be established to meet a

petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697.

Review of a *Strickland* claim under § 2254(d)(1) is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

## 2.    POST-CONVICTION EVIDENTIARY HEARING

At the evidentiary hearing held on petitioner's state post-conviction relief petition, Dr. Glen Farr, an expert in pharmacology, testified that symptoms of chronic use of crack cocaine include confusion, anxiety, cocaine psychosis, paranoia and feelings of invincibility. *Fowler*, 2014 WL 3362351, at *1. In response to a hypothetical based on Petitioner's version of his conduct:

> Dr. Farr opined that petitioner's act of pushing the dresser against the door indicated paranoia. Dr. Farr stated that petitioner demonstrated confusion in his mistaken belief that he had extinguished the fire when he had not done so. He further testified that petitioner's effort to conceal the fire by removing the smoke detector showed irrational thinking on his part. Witnesses' reports that petitioner appeared "nervous" and "jittery" were also consistent with cocaine use. In sum, Dr. Farr concluded that it was "unlikely that [petitioner] would have had the state of mind to intentionally set a fire." He said that petitioner had "a good thing ... the room ... isolation.... I would not think that a cocaine addict would want to mess that up by setting a fire."

*Id.*, at *2.

On cross-examination, Dr. Farr admitted that he had not viewed the crime scene photographs or met with Petitioner, and that his opinion was based solely on the facts as relayed by Petitioner through his post-conviction counsel. *Id.* He further acknowledged that he had not read the trial transcript. *Id.*

Petitioner's trial counsel also testified at the evidentiary hearing and his testimony relevant to the calling of an expert witness was summarized by the TCCA as follows:

> When asked whether he should have called a pharmacologist to testify at petitioner's trial, trial counsel stated, "I think it was effective. I wish I had done it. But no, it's not something I considered doing." However, he stated that Dr. Farr's testimony would have been "of greater value" if the case had been tried before a jury.

*Id.*, at *4.

The post-conviction court, applying *Strickland*, concluded that the decision "not to hire an expert pharmacologist was <u>not</u> ineffective assistance of counsel" and that trial counsel's "defense of this case was well within appropriate professional standards" and "was not deficient" [Doc. 5 Attachment 14 pp. 335–37]. On appeal, the TCCA, also applying *Strickland*, determined that "the evidence does not preponderate against the post-conviction court's findings in this regard." *Fowler*, 2014 WL 3362351, at *8. Consistent with the post-conviction court's analysis, the TCCA concluded:

> The trial judge presided over the drug court program and was well-versed in matters concerning drug addicts, drug-induced behaviors, and effects of chronic cocaine use. The trial judge's statements when he delivered his ruling indicate that he considered petitioner's explanations and equated petitioner's actions with irrational and illogical thinking. As trial counsel opined, perhaps an expert would have been more germane at a jury trial. However, failure to call such an expert at petitioner's trial did not amount to ineffective assistance.

*Id.*

### 3. DISCUSSION

The task before the Court is to determine whether the state courts' application of *Strickland* to the facts of Petitioner's claim was unreasonable. The Court concludes that it was not.

It is a "longstanding and sound principle that matters of trial strategy are left to counsel's discretion." *Dixon v. Houk*, 737 F.3d 1003, 1012 (6th Cir. 2013). "[S]trategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Here, as the post-conviction court pointed out, trail counsel explained at the evidentiary hearing that he thought he could prevail in showing that the fire was accidental because he believed Petitioner to be a good witness and he had hired a well-qualified expert who testified in great detail that the fire was an accident [Doc. 5 Attachment 14 p. 337]. Although trial counsel testified that, in hindsight, he wished he would have called Dr. Farr, he also recognized that such testimony would have been of greater value if the case had been tried before a jury. *Fowler*, 2014 WL 3362351, at *4. Counsel's defense strategy was within his discretion and was not unreasonable. Moreover, as both the post-conviction court and the TCCA stressed, Dr. Farr's testimony would have been of limited value in the bench trial because the trial judge had presided over the drug court and was "well-versed in matters concerning drug addicts, drug-induced behaviors and the effects of chronic cocaine use" and his statements in rendering a verdict indicated that he equated Petitioner's conduct with "irrational and illogical thinking." *Id.*, at *8.

Under the doubly deferential standard of *Strickland* and the AEDPA, the Court is satisfied that the state court decision finding that trial counsel was not ineffective for failing to call an expert witness was not unreasonable. Accordingly, because that decision was neither contrary to, nor an unreasonable application of, federal law as established in *Strickland*, Petitioner's ineffective assistance of counsel claim will be denied.

## V. CONCLUSION

For the reasons set forth herein, the Court finds that none of Petitioner's claims warrant the issuance of a writ of habeas corpus. Accordingly, Petitioner's § 2254 motion [Doc. 1] and motion for new trial [Doc. 12] will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

## VI. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner whose claims have been rejected on a procedural basis must demonstrate that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*; *see also Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

Here, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to any of his claims. Specifically, jurists of reason would not debate this Court's finding that Petitioner procedurally defaulted his claim of ineffective assistance of counsel related to the waiver of his right to jury trial by failing to properly raise it on appeal from the denial of his post-conviction petition. Nor has Petitioner shown that reasonable jurists would

find this Court's assessment of Petitioner's remaining constitutional claims debatable or wrong.

Because Petitioner has failed to make a substantial showing of the denial of a constitutional right,

a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**


            _____*/s/ Harry S. Mattice, Jr.*_____
            HARRY S. MATTICE, JR.
            UNITED STATES DISTRICT JUDGE